David C. Kresin (019858)
YEN PILCH ROBAINA & KRESIN PLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
dck@yprklaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Megan Burns,<br><br>    Plaintiff,<br><br>vs.<br><br>New SWVMG, LLC dba Southern Arizona Veterinary Specialty & Emergency Center; and Anton Cocroft,<br><br>    Defendants. | No.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

    For her Complaint, Plaintiff Megan Burns, by and through her counsel, alleges as follows:

    1.    Plaintiff Megan Burns ("Ms. Burns") is an adult female residing in Pima County, Arizona.

    2.    Defendant New SWVMG, LLC dba Southern Arizona Veterinary Specialty & Emergency Center ("the Company") is an Arizona limited liability company that conducts business in and has its principal place of business Pima County, Arizona. At all material times, the Company was an employer of Ms. Burns within the meaning of the various employment causes of action asserted in this case.

    3.    Defendant Anton Cocroft ("Mr. Cocroft") at all relevant times was a resident of Pima County, Arizona.

    4.    This action is brought pursuant to the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42

U.S.C. § 12101 *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and the common law of the State of Arizona.

5. The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 2000e-5(f) & 12117(a); 29 U.S.C. § 2617(a), and 28 U.S.C. §§ 1331 and 1367.

6. Defendants reside in and a significant portion of the events giving rise to these causes of action occurred in Pima County, Arizona.

7. This Court has personal jurisdiction over the Defendants and venue is proper in this Court.

8. Ms. Burns was employed by the Company as a veterinary assistant from April 29, 2022 until her discharge on May 8, 2023.

9. Throughout her employment, Ms. Burns performed her job competently and was a good employee.

10. In September 2022, Ms. Burns began receiving inappropriate sexually harassing texts from one of the Company's other employees—a man in his fifties named Anton Cocroft—apparently seeking a romantic or sexual relationship with her (despite that she was more than two decades younger than him).

11. In response, Ms. Burns asked Mr. Cocroft to stop sending inappropriate texts and to keep their communication on a professional level only.

12. Ms. Burns also reported the inappropriate communications to the Company's human resources personnel, but the Company took no action to deter him from the harassing conduct.

13. Prior to that time, Mr. Cocroft already had a documented criminal history of violent conduct including, among other crimes, domestic battery. The Company should have known of the risk to co-workers based on Mr. Cocroft's publicly available criminal history.

14. After the Company failed to act in response to Ms. Burns' report of harassment, Mr. Cocroft's harassment continued and escalated to the point that he sexually assaulted Ms. Burns on February 16, 2023.

15. That assault caused Ms. Burns to suffer severe, disabling trauma. As a result of the sexual assault and resulting trauma, Ms. Burns developed mental impairments, including post-traumatic stress disorder, severe depression, and severe anxiety, that substantially limited her ability to perform major life activities including sleeping, concentrating, and interacting with others.

16. As a result of the harm she suffered from the assault, Ms. Burns needed to take time off from work and she took off for a little over a week, returning to work on March 3. During that week off, on February 27, Ms. Burns had a call with the Company's HR representative Allison Miller to update her on her status. During the call, Ms. Burns described the context of the assault and discussed the court order mandating that Mr. Cocroft stay a certain distance away from Ms. Burns.

17. During that call, Ms. Miller acknowledged to Ms. Burns that she considered Ms. Burns' report to be a report of sexual harassment (under Title VII) but directed Ms. Burns to keep the entire matter private and not to discuss with any other employees the situation or her discomfort being around Mr. Cocroft, claiming that such conduct would violate the company's policies regarding sexual harassment and conflict of interest.

18. In response to Ms. Burns' report to her, Ms. Miller concluded that Ms. Burns could only be scheduled at the Ft. Lowell location because the Company would take no negative action against Mr. Cocroft related to the assault on one of its own employees. In doing so, the Company punished Ms. Burns for her report of sexual harassment by preventing her from working at one of the two worksites, resulting in a substantial reduction in her work hours.

19. During that same call, Ms. Miller asked Ms. Burns questions regarding her mental health treatment status.

20. After Ms. Burns tried to work for several weeks, she left work again on approximately April 18 due to a mental breakdown from the ongoing trauma of working for the same employer as her assailant while knowing that the Company had done nothing

to deter or discipline Mr. Cocroft for his known deviant behavior despite being aware of the sexual assault as well as the prior history of inappropriate messages he sent to Ms. Burns.

21. On April 26, Ms. Burns was admitted to Sonoran Behavioral Health for treatment. She received a leave of absence with a planned release to return to work on May 6.

22. On May 3, Ms. Burns reached out to Ms. Miller to notify the Company of her need for additional leave "for medical purposes" under the FMLA and requesting the FMLA paperwork she needed to complete. In response, the next day, Ms. Miller acknowledged that the FMLA applied and sent the requested FMLA paperwork.

23. On May 4, Ms. Miller also began criticizing Ms. Burns for the failure to "call in" with respect to her return to work on May 6 and threatened Ms. Burns: "If we don't hear from you by the end of today (5/4/23 at 5:00p), we'll assume a resignation."

24. Within minutes, Ms. Burns responded by email, letting Ms. Miller and the Company know that she had notified Ms. Miller of her need for FMLA leave as soon as she could and that she was unable to handle oral communication due to her disabling anxiety but that she was reachable by text and email and promising to get the FMLA paperwork submitted as soon as possible.

25. Less than a half hour later, Ms. Miller responded with increased hostility, claiming that the Company had not been provided the "further restrictions" preventing Ms. Burns' return (despite that Ms. Burns had just notified her of the need and asked for the paperwork to complete) and stating that phone calls were "necessary" regardless of Ms. Burns' assertion that she could not talk on the phone because of her anxiety.

26. Ms. Burns immediately responded by email, stating that she would provide a written doctor's note by the next day.

27. Just 15 minutes later, Ms. Miller responded highlighting apparent excerpts from company policies related to attendance, attendance reporting requirements, and discharge based on insubordination, despite that Ms. Miller was fully aware of the

circumstances of Ms. Burns' absences—specifically, that Ms. Burns absences all related to her disabling anxiety and trauma and that Ms. Burns had asserted she could not call in because of her condition.

28. Ms. Miller then followed up stating: "Megan. If you can text. You can call. You're being insubordinate." Ms. Miller then insisted that Ms. Burns provide medical documentation before May 6 or her absence would be unexcused and grounds for termination.

29. Ms. Miller also insisted that the medical documentation include a statement that Ms. Burns was "unable to make a phone call"—a ridiculous requirement considering that Ms. Burns had not asserted she was unable to talk with anyone on the phone, but that she was unable to talk to her employer—the party who was partially responsible for the sexual assault and resulting trauma she had suffered.

30. Ms. Miller's conduct was even more outrageous considering she already knew of Ms. Burns' difficulty from her previous phone communications with Ms. Burns on February 27, in which Ms. Burns had broken down and needed to end the call.

31. The next day, Ms. Burns provided a medical note from James Abanishe, MD, of Mountain Dew Behavioral Health PLC, which stated: "[Megan Burns] is a patient of mine and has been adhering to treatment plan. Due to recent stressor, she has decompensated with increased anxiety, she will need time off work to adjust to her medications and for the medication to take effect, time off will allow her to adjust to treatment plan, she will need from 05/06/2023 through 06/17/2023. Preferred mode of communication by the patient will be via writing due to ongoing anxiety."

32. Notwithstanding the clear, medically documented notice of her need for additional leave and that her anxiety was causing her desire to communicate in writing, the Company nevertheless punished her for both—at 2:56pm on Monday, May 8, 2023, Ms. Miller sent an email to Ms. Burns notifying her that the Company was moving forward with termination, acknowledging receipt of the medical note, including that the provider indicated her preference not to call, but stating: "Your medical provider did not restrict

your ability to make a phone call. . . . At this point, your history of call-offs, tardiness and lack of appropriate contact is outside of policy."

33. After the Company received notice of Ms. Burns' disability and her need for reasonable accommodations, including her need for medical leave and limiting her communication with the Company to written communications, the Company denied her requested accommodations and failed to engage in the interactive process.

34. After documenting her May 8 termination, Ms. Miller and the Company continued mistreating Ms. Burns. That same day, Ms. Burns received a notice indicating that her benefits would end effective May 1, despite that the form itself (and apparently the ERISA-covered employee benefits policy) provided: "your current medical, dental and vision coverage will remain in effect until the last day of the month in which termination occurs."

35. Although there was no doubt from the documentation that the termination occurred on May 8 (and therefore the benefits should have extended to May 31), Ms. Miller inexplicably claimed that Ms. Burns' last day worked determined her termination date and insisted that the benefits would end at the conclusion of the previous month, denying Ms. Burns an additional month of coverage as an employee.

36. Ms. Burns sought and continues to seek regular medical and psychological care for her conditions, which have been caused and exacerbated by the Defendants' conduct.

37. Ms. Burns filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Arizona Attorney General's Office, Civil Rights Division ("ACRD") and received a notice of right to sue on October 18, 2023.

**COUNT ONE**
**(Sexual Harassment in violation of Title VII)**
**(Against the Company)**

38. Ms. Burns incorporates all previous allegations in this Complaint.

39. At all relevant times, the Company was an employer subject to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*

40. At all relevant times, Ms. Burns was an employee under Title VII.

41. As described above, in response to Ms. Burns' complaints about Mr. Cocroft's harassment, the Company failed and refused to take action against Mr. Cocroft or otherwise to protect Ms Burns from Mr. Cocroft and subjected Ms. Burns to the escalating harassment and sexual assault by Mr. Cocroft.

42. In doing so, the Company subjected Ms. Burns to conduct that was unwelcome and was sufficiently severe or pervasive to alter the conditions of Ms. Burns' employment and create a sexually abusive or hostile work environment.

43. Ms. Burns perceived the working environment to be abusive or hostile and a reasonable woman in Ms. Burns's circumstances would consider the working environment to be abusive or hostile.

44. As a result of the Company's conduct, Ms. Burns has suffered and continues to suffer health care expenses, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

45. The Company's conduct described above was wanton, reckless and/or shows spite or ill will and therefore justifies an award of punitive damages against the Company.

**COUNT TWO**
**(Retaliation in violation of Title VII)**
**(Against the Company)**

46. Ms. Burns incorporates herein all previous allegations in this Complaint.

47. The Company engaged in several materially adverse employment actions against Ms. Burns including, among other things, reducing Ms. Burns' work opportunities and hours in March 2023 and subjecting her to increased scrutiny and terminating her employment in May 2023.

48. The Company engaged in the above adverse actions based on its illegal retaliatory motive under Title VII of the Civil Rights Act of 1964; specifically, the

1  Company retaliated against Ms. Burns based on her protected objections or opposition to
2  the sexual harassment/assault that she experienced, as described above.

3       49.     As a direct result of the Company's conduct described above, Ms. Burns has
4  suffered emotional distress, reputational harm, lost income in the form of past, present and
5  future wages and benefits, and other monetary and non-monetary benefits due her.

6       50.     As a direct result of the Company's conduct described above, Ms. Burns
7  seeks recovery of damages in an amount to be proven at trial including damages for
8  economic loss and compensatory damages for pain and suffering, emotional distress, harm
9  to reputation and other losses.

10      51.     The Company's conduct described above was wanton, reckless and/or shows
11  spite or ill will and therefore justifies an award of punitive damages against the Company.

**COUNT THREE**
**(Violations of the ADA)**
**(Against the Company)**

15      52.     Ms. Burns incorporates all previous allegations in this Complaint.

16      53.     After the February 2023 sexual assault, Ms. Burns became an individual with
17  a disability under the ADA in that she had a mental or physical impairment that
18  substantially limited one or more major life activities.

19      54.     At all relevant times during her employment with the Company, Ms. Burns
20  could perform the essential functions of her job with reasonable accommodation.

21      55.     Immediately after the Company learned of Ms. Burns's disability, Ms. Miller
22  and the Company began making improper medical inquiries regarding Ms. Burns' mental
23  health treatment in February 2023.

24      56.     After Ms. Burns suffered a mental breakdown in mid-April 2023, Ms. Burns
25  requested reasonable accommodations for her disability by asking for a leave of absence
26  and permission to communicate with the Company in writing. The Company denied Ms.
27  Burns's accommodation requests, failed to engage in any interactive process, and instead
28  terminated Ms. Burns' employment because of her need for the requested accommodations.

57. The Company violated the ADA by engaging in improper medical inquiries, by denying Ms. Burns's requests for reasonable accommodation, by failing to engage in the interactive process to determine whether the Company could provide alternative reasonable accommodations to Ms. Burns, by discharging Ms. Burns from employment because of her disability, and by otherwise subjecting Ms. Burns to differing terms and conditions of employment because of her disability.

58. As a result of the Company's conduct, Ms. Burns has suffered and continues to suffer lost income, lost fringe benefits, medical expenses, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

59. The Company's conduct described above was wanton, reckless and/or shows spite or ill will and therefore justifies an award of punitive damages against the Company.

**COUNT FOUR**
**(Violations of FMLA)**
**(Against the Company)**

60. Ms. Burns incorporates all previous paragraphs of the Complaint as though set forth fully herein.

61. At all relevant times, the Company was an employer within the meaning of the FMLA.

62. At all relevant times, Ms. Burns was an eligible employee within the meaning of the FMLA.

63. Ms. Burns had a serious health condition under the FMLA.

64. As a result of Ms. Burns's own serious health condition, Ms. Burns needed to take a leave of absence.

65. Ms. Burns complied with all legal requirements necessary to be entitled to take medical leave under the FMLA.

///

///

66. The Company denied Ms. Burns's request for medical leave under the FMLA and instead terminated Ms. Burns's employment because she needed leave to which she was entitled under the FMLA.

67. As a result of the Company's conduct, Ms. Burns has suffered and continues to suffer lost income, lost fringe benefits, medical expenses, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life.

## COUNT FIVE
## (Assault)
## (Against Anton Cocroft)

68. Ms. Burns incorporates herein all previous allegations in this Complaint.

69. Through the conduct described above, Mr. Cocroft intended to cause harm or offensive contact with Ms. Burns or intended to cause Ms. Burns to suffer apprehension of an immediate harmful or offensive contact.

70. Through the conduct described above, Mr. Cocroft caused Ms. Burns to suffer apprehension of an immediate harmful or offensive contact.

71. As a direct result of Mr. Cocroft's conduct, Ms. Burns suffered pain, discomfort, suffering, shame, anxiety, severe emotional distress, reputational harm, loss of enjoyment of life, and loss of love, affection, and companionship in other close relationships.

72. Mr. Cocroft engaged in the above conduct with intent to cause injury, consciously disregarding a substantial risk that his conduct might significantly injure the rights of Ms. Burns, and/or knowing that his conduct created a substantial risk of significant harm to Ms. Burns.

73. Mr. Cocroft's conduct described above was wanton, reckless and/or shows spite or ill will and therefore justifies an award of punitive damages against Mr. Cocroft.

///

///

## COUNT SIX
### (Battery)
### (Against Anton Cocroft)

74. Ms. Burns incorporates herein all previous allegations in this Complaint.

75. Through the conduct described above, Mr. Cocroft intended to cause harm or offensive contact with Ms. Burns or intended to cause Ms. Burns to suffer apprehension of an immediate harmful or offensive contact.

76. Through the conduct described above, Mr. Cocroft caused harm or offensive contact with Ms. Burns.

77. As a direct result of Mr. Cocroft's conduct, Ms. Burns suffered pain, discomfort, suffering, shame, anxiety, severe emotional distress, reputational harm, loss of enjoyment of life, and loss of love, affection, and companionship in other close relationships.

78. Mr. Cocroft engaged in the above conduct with intent to cause injury, consciously disregarding a substantial risk that his conduct might significantly injure the rights of Ms. Burns, and/or knowing that his conduct created a substantial risk of significant harm to Ms. Burns.

79. Mr. Cocroft's conduct described above was wanton, reckless and/or shows spite or ill will and therefore justifies an award of punitive damages against Mr. Cocroft.

## COUNT SEVEN
### (Negligent and/or Reckless Hiring/Retention/Supervision)
### (Against the Company)

80. Ms. Burns incorporates herein all previous allegations in this Complaint.

81. As Ms. Burns' employer, the Company owed Ms. Burns a duty of care to avoid subjecting her to unreasonable risks of harm related to her employment.

82. The Company recklessly breached that duty of care by subjecting her to the harassment and sexual assault by Mr. Cocroft after the Company ignored available

information that showed Mr. Cocroft had engaged in violence against other women and ignored Ms. Burns reports of Mr. Cocroft's harassing behavior.

83. Upon information and belief, the Company had reason to know of Mr. Cocroft's violent propensity toward women prior to hiring him.

84. In any event, after Ms. Burns reported Mr. Cocroft's harassment, the Company could have and should have known of Mr. Cocroft's violent propensity toward women and should have terminated his employment at that time.

85. If the Company had acted reasonably and prudently in response to the available information and taken action against Mr. Cocroft, Ms. Burns would not have suffered the escalating harassment and sexual assault.

86. The Company's reckless conduct toward Ms. Burns was the proximate cause of the harm suffered by Ms. Burns.

87. As a result of the Company's reckless conduct, Ms. Burns has suffered and continues to suffer medical expenses, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, and loss of enjoyment of life.

88. The Company's conduct described above was wanton, reckless and/or shows spite or ill will and therefore justifies an award of punitive damages against the Company.

89. Ms. Burns demands a jury trial on all issues triable to a jury.

WHEREFORE, Plaintiff Megan Burns prays for judgment against Defendants New SWVMG, LLC dba Southern Arizona Veterinary Specialty & Emergency Center and Anton Cocroft as follows:

A. For an award of economic damages in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from Defendants' conduct;

B. For an award of compensatory damages for mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life and other losses incurred by Plaintiff as a result of Defendants' conduct;

| | | |
|---|---|---|
| C. | For an award of liquidated damages under the FMLA; |
| D. | For an award of punitive damages; |
| E. | For an award of attorneys' fees, expert witness fees, and related expenses; |
| F. | For an award of prejudgment and post-judgment interest; |
| G. | For an award of Plaintiff's costs of suit incurred herein; and, |
| H. | For an award of such other relief as the Court may deem just and proper. |

DATED this 9th day of January, 2024.

                        YEN PILCH ROBAINA & KRESIN PLC

                        By  /s/David C. Kresin
                              David C. Kresin
                              Attorneys for Plaintiff Megan Burns